UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-10965-RWZ

JOHN LEWIS

v.

THE CAPO GROUP, INC., RAV BAHAMAS, LTD.,
and BIMINI BAY RESORT AND CASINO

MEMORANDUM AND ORDER

December 17, 2012

ZOBEL, D.J.

Plaintiff John Lewis ("Lewis") claims that defendants The Capo Group, Inc. ("Capo"), RAV Bahamas, Ltd. ("RAV"), and Bimini Bay Resort and Casino ("Bimini Bay") defrauded him of $105,900 by misrepresenting the facilities at a resort complex they were building in the Bahamas. Defendants move to stay this case pending arbitration proceedings.

**I.   Background**

As appropriate in this procedural posture, the facts below are recited as alleged in the complaint.

Defendants are three corporations that collectively purchase, develop, and sell vacation property and rentals in the Bahamas.[1] In 2004, Lewis learned from a friend that defendants planned to build a new resort called Bimini Bay Resort and Casino.

---

[1] RAV is a wholly owned subsidiary of Capo. The relationship between these two entities and defendant Bimini Bay is unclear.

Unbeknownst to Lewis, this friend was being paid by defendants to solicit buyers and investors for that project. Lewis was interested in buying a condominium in the new resort; he consulted defendants' brochures and website, and then flew to the Bahamas to tour the proposed site. Defendants advertised that the proposed resort would be uniquely attractive because of the inclusion of a planned golf course and casino. On August 27, 2004, Lewis executed a purchase agreement with RAV for an ocean-view "Millennium II" condominium and sent RAV a check for $75,200 towards the purchase price. The resort, including Lewis's condominium, was to be fully constructed by December 31, 2006.

In 2006, Lewis learned that the condominium reserved for him in the new building did not have an ocean view, and that the new resort did not have either a casino or a golf course. However, defendants assured him that the casino and golf courses were under construction. They offered to transfer his deposit to a new "Topsider" condominium that they told him would be completed in the same construction phase as the casino. On January 2, 2007, Lewis and RAV executed a second purchase and sale agreement in which Lewis agreed to buy a "Topsider" condominium rather than a "Millennium II." On March 20, 2008, Lewis received a letter requesting an additional payment of $30,700 towards his condominium, which he paid by check to RAV on April 10, 2008. In December 2008 RAV sent him a notice that he had to complete the purchase of his condominium in 21 days or forfeit his security deposit. Lewis raised his concerns with defendants, including the lack of any casino or golf course at the new resort, and the defendants sporadically proposed negotiating

extensions of the closing date between January 2009 and December 2011. Defendants told Lewis that, in the meantime, his condominium was placed in the resort's rental program, but never provided him any information or accounting of the renting of his unit. No casino or golf course was ever built, and Lewis never occupied his promised condominium. Eventually, RAV sold the unit reserved for Lewis to a third party for $254,000. Defendants have refused to repay the $105,900 that Lewis had sent them.

Each of the two purchase and sale agreements that Lewis and RAV signed (in 2004 and in 2007) contained identical arbitration clauses. Those clauses were included as subsection 8 of paragraph 26 in each contract. Paragraph 26 opens by stating that any alteration or deviation from the architectural drawings of the condominium and its building must be set down in a written order signed by both parties, and any costs of such alteration will be added to the purchase price. It then continues with seventeen miscellaneous subsections, ranging from permitting RAV to hire subcontractors, to requiring RAV to leave the condominium broom clean on completion, to setting liquidated damages if Lewis defaults. Subsection 8, in the middle of these miscellaneous subsections, reads: "All disputes hereunder shall be resolved by binding arbitration in accordance with the provisions of the Arbitration Act of The Bahamas." Docket # 11, Exs. A & B.

## II. Legal Standard

Under the Federal Arbitration Act ("FAA"), the court must stay any suit that is made subject to arbitration by the written agreement of the parties. 9 U.S.C § 3. The court may also, in its discretion, "stay litigation among the non-arbitrating parties

pending the outcome of the arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 20 n.23 (1983).

**III.   Analysis**

RAV argues it is entitled to a stay based on 9 U.S.C. § 3. To prove that statute applies, RAV must demonstrate "that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope." Dialysis Access Ctr., Ltd. v. RMS Lifeline, Inc., 638 F.3d 367, 375 (1st Cir. 2011) (quoting InterGen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003)). Lewis contends that the first and fourth elements of that test are not met.

Lewis first argues that no valid agreement to arbitrate exists because the defendants induced him to sign the purchase agreements by fraud (specifically, by representing that the new resort would have a casino and golf course). That challenge fails. The FAA makes an arbitration clause severable from the contract in which it appears. 9 U.S.C. § 2; Granite Rock Co. v. Int'l Bhd. of Teamsters, 130 S. Ct. 2847, 2858. A claim that the entire contract is void for fraudulent inducement therefore does not invalidate an arbitration clause. Prima Paint Corp. v. Flood & Conklin Mfg., 388 U.S. 395, 403-04 (1967); Dialysis Access Ctr., 638 F.3d at 377, 383. Instead, Lewis would have to allege fraudulent inducement with respect to the arbitration clause itself—for example, by alleging RAV falsely told him arbitration would be cheaper for him or would better preserve his rights. He has made no such allegation.

Lewis next argues that his claims fall outside the arbitration clause because the

4

text and structure of the purchase agreements give that clause a narrow scope. First, he notes that the arbitration clause is one of seventeen subsections in paragraph 26, and so argues that the language "[a]ll disputes hereunder" limits arbitration to disputes under paragraph 26 rather than disputes under the entire agreement.  Moreover, he asserts that paragraph 26 covers only the safety, workmanship, and aesthetics of each individual condominium, not disputes about the resort as a whole (such as misrepresentations about the casino and golf course). Finally, he argues that his first four claims—for fraud, unjust enrichment, and racketeering—do not arise under the agreement at all.

RAV, on the other hand, asserts that Lewis's claims are within the scope of the arbitration agreement. It points to different subsections in paragraph 26 that deal with construction of the resort building as a whole, and argues that in any case Lewis's claims also rely on alleged problems with his individual condominium (e.g., its late completion). As for Lewis's first four claims, RAV says they arise under the agreement because they depend on allegations of fraudulent inducement. See Dialysis Access Ctr., 638 F.3d at 381-82 (holding a fraudulent inducement claim is arguably encompassed by an arbitration clause covering disputes "arising under" the agreement).

Lewis's arguments are plausible, as are those of RAV.  While it is not clear that the arbitration clause was intended by the parties to cover claims such as Lewis's, that ambiguity must be resolved in accordance with the "emphatic federal policy in favor of arbitral dispute resolution." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,

5

473 U.S. 614, 631 (1985); see Volt Info. Sciences v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 476 (1989) ("[D]ue regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration."); Dialysis Access Ctr., 638 F.3d at 382 (interpreting ambiguous arbitration clause to cover fraudulent inducement claim). Given that pro-arbitration presumption, the arbitration clause is arguably broad enough to cover the claims Lewis raises, and he can bring his arguments about the scope of the arbitration clause to the arbitration proceedings themselves.[2]

Finally, Lewis requests that the suit continue against the other two defendants even if proceedings against RAV are stayed. Where a case involves some arbitrable claims, the court may in its discretion stay proceedings against non-arbitrating parties. Moses H. Cone Mem'l Hosp., 460 U.S. at 20 n.23. Here, given that Lewis's claims against each defendant overlap substantially, that the arbitrable claims predominate the suit, and that arbitration may provide Lewis all the relief he seeks, judicial efficiency favors allowing arbitration to proceed first.

## IV. Conclusion

Defendants' motion to stay (Docket # 10) is ALLOWED. It is ORDERED that this

---

[2] The Arbitration Act of the Bahamas gives arbitrators jurisdiction to determine "what matters have been submitted to arbitration in accordance with the arbitration agreement." Docket # 17, Ex. D at § 41.1(c). Pointing to that fact, RAV argues that the parties agreed to have the scope of the arbitration clause determined by an arbitrator, because the parties referred to the Arbitration Act in the arbitration clause. Given the outcome reached above, the court need not address that argument. However, RAV's position does find substantial support in Awuah v. Coverall North America, Inc., 554 F.3d 7, 10-12 (1st Cir. 2009).

action be stayed until the pending arbitration is concluded.

|    December 17, 2012    |         /s/Rya W. Zobel         |
|:---:|:---:|
| DATE | RYA W. ZOBEL |
| | UNITED STATES DISTRICT JUDGE |